E-FILED
Monday, 03 December, 2018  12:02:35 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| Kayley Sprout, | |
| Plaintiff, | |
| v. | No. 18 CV 1322 |
| VILLAGE OF HUDSON, a municipal corporation, DALE SPARKS, in his individual capacity, ALAN MEISSNER, in his individual capacity, SARA HILL, in her individual capacity, PHIL MORRIS, in his individual capacity, CALEB POST, in his individual capacity, and PAT O'GRADY, in his individual capacity, | Judge James E. Shadid<br><br>Jury Trial Demanded |
| Defendants. | |

## SECOND AMENDED COMPLAINT

Plaintiff KAYLEY SPROUT, by her attorney, STEPHEN R. MILLER, SCHWARTZ, NICHOLAS, LIFTON & TAYLOR, LTD., and for her Second Amended Complaint against Defendants VILLAGE OF HUDSON, DALE SPARKS, ALAN MEISSNER, SARA HILL, PHIL MORRIS, CALEB POST, and PAT O'GRADY states as follows:

### Introduction

1.     Plaintiff Kayley Sprout seeks redress for unlawful acts by Defendants Village of Hudson (the "Village"), Dale Sparks ("Sparks" or "Chief Sparks"), Alan Meissner, Sara Hill, Phil Morris, Caleb Post, , and Pat O'Grady in violation of 42 U.S.C. § 1983; Section 15(b) of the Illinois Whistleblower Act ("IWA"), 740 ILCS 174/15(b); and Illinois common law. Plaintiff seeks declaratory and injunctive relief as well as damages for her injuries.

## Jurisdiction

2.      This Court has jurisdiction over this matter pursuant to pursuant to 28 U.S.C. §§ 1331 and 1367.

3.      Venue is proper under 28 U.S.C. §1391(b). The events giving rise to the claims asserted herein occurred in this judicial district, the individual Defendants all reside in this district, and the Defendant, Village of Hudson, is a municipal corporation located in this judicial district.

## The Parties

4.      Plaintiff Kayley Sprout is a female and a resident of McLean County, Illinois.

5.      Defendant Village is a municipal corporation, organized under the laws of the State of Illinois and conducting business in McLean County, Illinois and the State of Illinois.

6.      At all relevant times, the Village employed Defendant Sparks. Defendant Sparks served as the Police Chief for the Village during all relevant times. Defendant Sparks is sued in his individual capacity.

7.      The Police Chief is responsible for the performance of the Hudson Police Department and all of its functions. The Police Chief is also responsible for executing and enforcing state and federal laws, all village ordinances, police regulations and orders of the Village President and Village Board of Trustees. As Police Chief, Defendant Sparks is a policymaker for the Village and has decision-making authority as to employment matters of employees of the Village, including employment decisions relating to Plaintiff.

8.      At all relevant times, Defendant O'Grady served as a member of the Village's Board of Trustees and the Trustee of Police on the Village's Board. Defendant O'Grady is sued in his individual capacity.

9.      Defendant O'Grady, as a member of the Board of Trustees, is a policymaker for the Village and has decision-making authority as to employment matters of employees of the Village, including employment decisions relating to Plaintiff.

10.     At all relevant times, Defendant Meissner served as a member of the Village's Board of Trustees and as the President of the Village's Board of Trustees. Defendant Meissner is sued in his individual capacity.

11.     Defendant Meissner, as a member of the Board of Trustees, is a policymaker for the Village and has decision-making authority as to employment matters of employees of the Village, including employment decisions relating to Plaintiff.

12.     At all relevant times, Defendant Hill served as a member of the Village's Board of Trustees and the Treasurer of the Village's Board. Defendant Hill is sued in her individual capacity.

13.     Defendant Hill, as a member of the Board of Trustees, is a policymaker for the Village and has decision-making authority as to employment matters of employees of the Village, including employment decisions relating to Plaintiff.

14.     At all relevant times, Defendant Morris served as a member of the Village's Board of Trustees and the Trustee of Water on the Village's Board. Defendant Morris is sued in his individual capacity.

15.     Defendant Morris, as a member of the Board of Trustees, is a policymaker for the Village and has decision-making authority as to employment matters of employees

of the Village, including employment decisions relating to Plaintiff.

16.     At all relevant times, Defendant Post served as a member of the Village's Board of Trustees and the Trustee of Contracts, Budget, and Employees on the Village's Board. Defendant Post is sued in his individual capacity.

17.     Defendant Post, as a member of the Board of Trustees, is a policymaker for the Village and has decision-making authority as to employment matters of employees of the Village, including employment decisions relating to Plaintiff.

## Factual Background

18.     Plaintiff Sprout began working for the Village as a part-time Police Officer on March 30, 2016. On May 10, 2016, Plaintiff was promoted to a full-time Police Officer with the Village.

19.     On March 17, 2017, Plaintiff was provided with a yearly performance evaluation, which covered the period of May 2016 through April 2017. The evaluation is scored using four ratings: "unacceptable," "acceptable," "good," and "outstanding." On this evaluation, Plaintiff's ratings were "outstanding" and "good," and there were no negative comments on the evaluation whatsoever. Defendant Sparks and Defendant O'Grady signed the performance evaluation.

20.     In April 2017, Plaintiff informed then-Mayor Jason Collins, who is an acquaintance of Plaintiff's, of her suspicion that Chief Sparks had tipped off a suspect prior to the execution of a search warrant, so that the suspect could remove guns from the home that was the target of the search warrant. Upon information and belief, the suspect did not hold a valid Firearm Owners Identification (FOID) card. Plaintiff believed that these actions on the part of Chief Sparks were a violation of state or federal law, rule,

4

or regulation. Specifically, Plaintiff believed Chief Sparks' actions to be criminal in nature.

21.     Upon information and belief, then-part-time Village Police Officer Jeff Gabor ("Officer Gabor") had also complained to then-Mayor Jason Collins about Chief Sparks' involvement in a separate act of misconduct in late 2016.

22.     Upon information and belief, in or around April 2017, then-Mayor Jason Collins informed Chief Sparks that he was not going to re-appoint him as Village Chief of Police.

23.     On April 18, 2017, Plaintiff attended a meeting of the Village Board of Trustees ("Board") at the request of then-Mayor Jason Collins.

24.     Plaintiff was not in uniform, was off-duty, and attended the meeting of the Village Board of Trustees as a citizen regarding a matter of public concern.

25.     When the Board became aware that Plaintiff was present to report her suspicion of Chief Sparks' misconduct, the Board moved to go into closed session and asked Plaintiff to leave the meeting and wait in the hallway.

26.     During the meeting, then-Mayor Jason Collins provided the Board with information regarding Chief Sparks' misconduct that Plaintiff had told him. Chief Sparks was in an adjacent room, his office, during this meeting, and had his office door open such that he was aware of what was being discussed in the meeting.

27.     During the meeting, the Board condemned Plaintiff and Officer Gabor for not following the "chain of command" in reporting their concerns about Chief Sparks and suggested that they be reprimanded.

28.     During the meeting, upon information and belief, the Board also condemned then-Mayor Jason Collins' decision to not re-appoint Chief Sparks as Chief of Police, and

stated that they would do whatever they needed to do in order to re-appoint Chief Sparks as Chief of Police.

29.     On May 2, 2017, Chief Sparks was re-appointed as Chief of Police.

30.     Following the May 2, 2017 meeting of the Village Board of Trustees, then-Mayor Jason Collins resigned from his position as Mayor of the Village of Hudson on May 3, 2017.

31.     On May 4, 2017, Chief Sparks circulated an email to the Village Police Department with the subject "NEWS RELEASE PRESS POLICY". The body of the email stated that "departmental policy is to say nothing." Defendant O'Grady and Defendant Post were also copied on the email.

32.     On May 8, 2017 Chief Sparks, Defendant O'Grady, and Defendant Morris retaliated against Plaintiff Sprout by extending her probationary period by one month and revoking her access to the evidence room. Chief Sparks, Defendant O'Grady, and Defendant Morris said that extending Plaintiff's probationary period was "because of this investigation against the Chief."

33.     That same day, Chief Sparks, Defendant O'Grady, and Defendant Morris presented Plaintiff with a list of questions for her to answer. The list included, but was not limited to, the following: (a) "If you felt that I did something criminally wrong, why did you not follow the chain of command?"; (b) "What did I do to lose your trust?"; (c) "Why did you not trust me?"; (d) "How can I trust your decision making?"; (e) "If retained, how do you think you're going to earn the trust of myself and the rest of the Village employees and the Board?"; and (f) "Trust is one of the police department's core values."

34.    Defendant Morris, Chief Sparks, and Defendant O'Grady also asked Plaintiff when she stopped enjoying working for Chief Sparks, why she discussed the issue regarding Chief Sparks with Officer Gabor, what she knew about then-Mayor Jason Collin's resignation, and whether she was promised anything or led to believe she would benefit from cooperating with Officer Gabor.

35.    Plaintiff refused to answer all of Defendants' questions without union representation present.

36.    During that same meeting on May 8, 2017, Chief Sparks told Plaintiff that "things will be changing" and that "the union won't protect you because you're on probation."

37.    That same day, Chief Sparks, Defendant O'Grady, and Defendant Morris also handed Plaintiff a printout of certain Village Police Department policies that cited to the definitions of "loyalty," "truthfulness," and "chain of command."

38.    On May 29, 2017, the Village terminated Officer Gabor's employment.

39.    Upon information and belief, on June 15, 2017, Officer Gabor went to the Illinois State Police to report his suspicion of Chief Sparks' misconduct.

40.    On June 19, 2017, Plaintiff went to the Normal Police Department's substation at 623 W. Orlando Ave., and provided information to Illinois State Police Investigator Kim Cessna regarding Chief Sparks' misconduct.

41.     Plaintiff was not in uniform, was off-duty, and attended the meeting with Investigator Kim Cessna as a citizen regarding a matter of public concern.

42.    Upon information and belief, the Illinois State Police contacted Chief Sparks about the reported misconduct following Plaintiff's meeting with Investigator Kim Cessna.

43.     On July 5, 2017, Plaintiff informed Defendant Meissner via email that she was pregnant and had a resulting 25-pound lifting restriction. Plaintiff suggested a number of light duty work and assignments she could perform in light of her lifting restriction. Plaintiff attached a copy of the Illinois Human Rights Act ("IHRA"), which contained provisions regarding accommodations and prohibiting pregnancy discrimination.

44.     On July 6, 2017, Plaintiff Sprout informed Chief Sparks and Defendant O'Grady that she was pregnant and had a resulting 25-pound lifting restriction, at which time Plaintiff asked to be switched to day shifts. Chief Sparks responded by asking "so you can't work nights?" Then, Plaintiff Sprout gave Chief Sparks and Defendant O'Grady a copy of the IHRA, which contained provisions prohibiting pregnancy discrimination. In response, both Chief Sparks and Defendant O'Grady stated that they were unaware that any law existed prohibiting pregnancy discrimination.

45.     On July 6, 2017, Plaintiff Sprout provided the same information as identified in Paragraph 43 and 44 to Chief Sparks and Defendant O'Grady via email.

46.     On July 11, 2017, Chief Sparks reassigned Plaintiff to desk duty and would not allow her access to the squad car, even though her only doctor-imposed limitation at that time was a 25-pound lifting restriction, but kept Plaintiff on the night shift and denied her request to work in the evidence room "because of your current medical condition and the fact that contents of some evidence that may possibly be absorbed through the skin or inhaled while in the room."

47.     Additionally, Chief Sparks told Plaintiff that he would not switch Plaintiff to day shift because he would be engaged in "confidential meetings" during the day that he

did not want her within earshot of. Chief Sparks also instructed Plaintiff not to wear her police uniform when she came to work.

48.     On July 12, 2017, Plaintiff presented Chief Sparks with a medical note from her doctor, in which her doctor specified that "Kayley may continue with normal duties until 18 weeks gestation except for a 25lb weight restriction. At that time she will need to be placed on desk job duties."

49.     On July 27, 2017, Chief Sparks presented Plaintiff with a Notice in response to Plaintiff's notification to Defendant Village of her pregnancy.

50.     The July 27, 2017 Notice stated that the Village may end Plaintiff's employment.

51.     Upon receiving the July 27, 2017 Notice, Plaintiff complained of pregnancy discrimination, in violation of the IHRA, to Chief Sparks that same day.

52.     On July 28, 2017, Plaintiff arrived to work and found a printout on her desk that stated the definition of "loyalty."

53.     On August 28, 2017, Plaintiff was denied IMRF disability benefits for her pregnancy due to Defendant Hill's failure to submit the proper employer statement.

54.     On September 5, 2017, Chief Sparks presented Plaintiff with a notice of termination on behalf of the Village because it allegedly did not have any further work available in the police department or anywhere else in the Village that would meet the 25-pound lifting restriction imposed by Plaintiff's doctor.

55.     Defendants O'Grady and Post were also present when Chief Sparks presented Plaintiff with the notice of termination.

56.     Prior to Plaintiff's termination of employment, Plaintiff was not given the opportunity to use her accumulated paid leave, or to be placed on unpaid leave as an employee as indicated in the July 27, 2017 Notice.

57.     Following Plaintiff's termination of employment, Defendant Hill retaliated against Plaintiff by purposefully delaying Plaintiff's receipt of IMRF disability benefits.

**<u>Count I</u>**
**First Amendment Retaliation – Freedom of Speech – Against Individual Defendants**

58.     Plaintiff restates and realleges by reference paragraphs 1 through 57 above as though fully set forth herein against all Defendants.

59.     As a Village employee, Plaintiff had a First Amendment right to freedom of speech.

60.     Plaintiff exercised her right to free speech by notifying the Mayor, the Village Board of Trustees, and the Illinois State Police of her belief that Chief Sparks had committed a crime as described above.

61.     In making these statements, Plaintiff spoke as a citizen on a matter of public concern, namely, the criminal conduct of the Village's Police Chief.

62.     Defendants were aware that Plaintiff complained of Chief Sparks' alleged misconduct to the Mayor, the Village Board of Trustees, and the Illinois State Police.

63.     The Defendants acted under color of law, misused their authority and position with the City, and retaliated against Plaintiff for reporting the wrongdoing she believed had occurred in the Village Police Department by extending her probation by one month, decreasing Plaintiff's job responsibilities by revoking her access to the evidence room, and eventually terminating her employment.

**WHEREFORE,** Plaintiff Kayley Sprout prays that this Court:

A.      Order Defendants to reinstate Plaintiff to her prior position;

B.      Award Plaintiff compensatory damages, back pay, front pay, pre-judgment interest, lost future wages, and future pecuniary damages;

C.      Award damages against the individual Defendants for emotional distress, humiliation, and embarrassment;

D.      Retain jurisdiction of this case until such time as it is assured that the Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

E.      Punitive damages as allowed by law;

F.      Award Plaintiff reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

G.      Grant such further and other relief as this Court deems just and proper.

## Count II
**First Amendment Retaliation – Freedom of Association – Against Individual Defendants**

64.     Plaintiff restates and realleges by reference paragraphs 1 through 57 above as though fully set forth herein against all Defendants.

65.     Defendants knew that Plaintiff was a supporter and acquaintance of Mayor Jason Collins outside of work.

66.     Defendants knew that then-Mayor Jason Collins had concerns with Chief Sparks' ongoing employment as Chief of Police and that he did not intend to re-appoint Chief Sparks.

67.     Defendants knew that Plaintiff had complained about Chief Sparks' alleged misconduct to then-Mayor Jason Collins.

11

1:18-cv-01322-JES-JEH  # 12   Page 12 of 26

68.    Defendants knew that Mayor Jason Collins was investigating Chief Sparks' misconduct.

69.    Defendants retaliated against Plaintiff because of her alliance with Mayor Jason Collins by extending her probationary period for one month and eventually terminating her.

70.    The Defendants' actions caused Plaintiff great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, loss wages and benefits, future pecuniary losses and other consequential damages.

71.    The Defendants acted under color of law, misused their authority and position with the City, and retaliated against Plaintiff for her alliance with Mayor Collins by extending her probation by one month, decreasing Plaintiff's job responsibilities by revoking her access to the evidence room, and eventually terminating her employment.

**WHEREFORE,** Plaintiff Kayley Sprout prays that this Court:

A.    Order Defendants to reinstate Plaintiff to her prior position;

B.    Award Plaintiff compensatory damages, back pay, front pay, pre-judgment interest, lost future wages, and future pecuniary damages;

C.    Award damages against the individual Defendants for emotional distress, humiliation, and embarrassment;

D.    Retain jurisdiction of this case until such time as it is assured that the Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

E.    Punitive damages as allowed by law;

F.      Award Plaintiff reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

G.      Grant such further and other relief as this Court deems just and proper.

**Count III**
**Section 1983 Deprivation of Constitutional Rights**
**Against Individual Defendants – Gender Discrimination**

72.     Plaintiff restates and realleges by reference paragraphs 1 through 57 above as though fully set forth herein against all Defendants.

73.     As a woman, Plaintiff is part of a protected class.

74.     Defendants, with discriminatory intent, extended Plaintiff's probationary period, revoked and further denied her access to the evidence room, refused to transfer Plaintiff to day shifts, assigned her to desk duty, instructed Plaintiff to adhere to a dress code other than her police uniform, revoked her access to a squad car, and terminated Plaintiff on the basis of her gender in violation of her right to equal protection pursuant to the Fourteenth Amendment.

75.     Male police officers who needed accommodations for medical conditions were not subjected to the same restrictions and were not terminated. Upon information and belief, these include but are not limited to Chief Sparks and Officer Joshua Payne, both of whom had serious medical conditions which involved severe physical limitations and restrictions and were accommodated, were not subjected to the same restrictions, and were not terminated.

76.     The Defendants' acts proximately caused the constitutional violations and other injuries alleged above, including, but not limited to pain and suffering, mental anguish, legal expenses, loss of income, as alleged herein.

**WHEREFORE,** Plaintiff Kayley Sprout prays that this Court:

13

A.      Order Defendants to reinstate Plaintiff to her prior position;

B.      Award Plaintiff compensatory damages, back pay, front pay, pre-judgment interest, lost future wages, and future pecuniary damages;

C.      Award damages against the Defendants for emotional distress, humiliation, and embarrassment;

D.      Enter a declaratory judgment that Defendants' actions violated the Fourteenth Amendment to the United States Constitution;

E.      Retain jurisdiction of this case until such time as it is assured that the Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

F.      Award punitive damages against Defendants;

G.      Award Plaintiff reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

H.      Grant such further and other relief as this Court deems just and proper.

**Count IV**
**Section 1983 Deprivation of Constitutional Rights**
**Against Individual Defendants – Pregnancy Discrimination**

77.     Plaintiff restates and realleges by reference paragraphs 1 through 57 above as though fully set forth herein against all Defendants.

78.     As a pregnant woman, Plaintiff was part of a protected class from at least July 2017 through the date of her termination on September 5, 2017.

79.     Defendants, with discriminatory intent, denied her access to the evidence room, refused to transfer Plaintiff to day shifts, assigned her to desk duty, instructed Plaintiff to adhere to a dress code other than her police uniform, revoked her access to a squad car, willfully delayed Plaintiff's receipt of disability benefits, and terminated Plaintiff

on the basis of her pregnancy in violation of her right to equal protection pursuant to the Fourteenth Amendment.

80.     Male police officers who were similarly (or more severely) restricted in their ability to work were accommodated and were not terminated. Upon information and belief, these include but are not limited to Chief Sparks and Officer Joshua Payne, both of whom had serious medical conditions which involved severe physical limitations and restrictions and were accommodated, were not subjected to the same restrictions, and were not terminated.

81.     The Defendants' acts proximately caused the constitutional violations and other injuries alleged above, including, but not limited to pain and suffering, mental anguish, legal expenses, loss of income, as alleged herein.

**WHEREFORE,** Plaintiff Kayley Sprout prays that this Court:

A.     Order Defendants to reinstate Plaintiff to her prior position;

B.     Award Plaintiff compensatory damages, back pay, front pay, pre-judgment interest, lost future wages, and future pecuniary damages;

C.     Award damages against the Defendants for emotional distress, humiliation, and embarrassment;

D.     Enter a declaratory judgment that Defendants' actions violated the Fourteenth Amendment to the United States Constitution;

E.     Retain jurisdiction of this case until such time as it is assured that the Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

F.     Award punitive damages against Defendants;

G.      Award Plaintiff reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

H.      Grant such further and other relief as this Court deems just and proper.

**Count V**
**Section 1983 *Monell* Claim Against Village Defendant**

82.     Plaintiff restates and realleges by reference paragraphs 1 through 57 and 50 through 59 above as though fully set forth herein against the Village Defendant.

83.     As described more fully above, the individual defendants discriminated and retaliated against Plaintiff in violation of her rights under the First and Fourteenth Amendments.

84.     The individual defendants were policymakers for the Village and had final decision-making authority with regards to employment decisions, including but not limited to extending Plaintiff's probationary period, revoking and further denying her access to the evidence room, revoking her access to a squad car, refusing to transfer Plaintiff to day shifts, instructing Plaintiff to adhere to a dress code other than her police uniform, assigning her to desk duty, willfully delayed Plaintiff's receipt of disability benefits, and terminating Plaintiff.

85.     In extending Plaintiff's probationary period, revoking and further denying her access to the evidence room, revoking her access to a squad car, refusing to transfer Plaintiff to day shifts, instructing Plaintiff to adhere to a dress code other than her police uniform, assigning her to desk duty, and terminating Plaintiff, the individual defendants made a deliberate choice to follow a course of action as a matter of official government policy.

16

86.     Plaintiff's constitutional injuries were directly caused by the individual defendants, in their exercise of final policymaking authority.

87.     The official government policy of the Village of Hudson is therefore the moving force behind the deprivation of Plaintiff's constitutional rights.

**WHEREFORE,** Plaintiff Kayley Sprout prays that this Court:

A.     Order Defendants to reinstate Plaintiff to her prior position;

B.     Award Plaintiff compensatory damages, back pay, front pay, pre-judgment interest, lost future wages, and future pecuniary damages;

C.     Award damages against the Defendants for emotional distress, humiliation, and embarrassment;

D.     Enter a declaratory judgment that Defendants' actions violated the Fourteenth Amendment to the United States Constitution;

E.     Retain jurisdiction of this case until such time as it is assured that the Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

F.     Award Plaintiff reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

G.     Grant such further and other relief as this Court deems just and proper.

<u>**Count VI**</u>
**Section 1983 *Monell* Failure to Train Claim Against Village Defendant**

88.     Plaintiff restates and realleges by reference paragraphs 1 through 57 and 72 through 81 above as though fully set forth herein against the Village Defendant.

89.     As described more fully above, the individual defendants discriminated and retaliated against Plaintiff in violation of her rights under the Fourteenth Amendment.

90.     Plaintiff's injuries as a result of this discrimination and retaliation were proximately caused by the Village of Hudson's policy, practice, and custom of failing to train its employees regarding the constitutional and statutory provisions prohibiting gender and pregnancy discrimination.

91.     The individual defendants' misconduct was undertaken pursuant to this policy, practice, and custom on the part of the Village of Hudson.

92.     As a matter of both policy and practice, the Village of Hudson directly encourages, and is thereby the moving force behind the gender and pregnancy discrimination at issue here by failing to adequately train its employees, such that its failure to do so manifests deliberate indifference.

**WHEREFORE,** Plaintiff Kayley Sprout prays that this Court:

A.      Order Defendants to reinstate Plaintiff to her prior position;

B.      Award Plaintiff compensatory damages, back pay, front pay, pre-judgment interest, lost future wages, and future pecuniary damages;

C.      Award damages against the Defendants for emotional distress, humiliation, and embarrassment;

D.      Enter a declaratory judgment that Defendants' actions violated the Fourteenth Amendment to the United States Constitution;

E.      Retain jurisdiction of this case until such time as it is assured that the Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

F.      Award Plaintiff reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

G.      Grant such further and other relief as this Court deems just and proper.

**Count VII**
**Section 1983 Conspiracy against Individual Defendants**

93.     Plaintiff restates and realleges by reference paragraphs 1 through 57 above as though fully set forth herein against all Defendants.

94.     The individual Defendants, acting together and under color of law, reached an understanding and agreement, engaged in a course of conduct, and otherwise conspired among and between themselves, to deprive Plaintiff of her constitutional rights, and did deprive her of her constitutional rights as alleged herein, including rights to freedom of speech and equal protection, and her right to be free from retaliation for reporting suspected criminal misconduct to government officials.

95.     In furtherance of the conspiracy, the individual Defendants committed the overt acts alleged herein including, but not limited to, extending Plaintiff's probationary period and terminating Plaintiff in retaliation for her exercise of her right to free speech and association and to report misconduct to government officials, and/or on the basis of her gender and/or in violation of her right to equal protection pursuant to the Fourteenth Amendment.

96.     The Defendants' acts were undertaken willfully and maliciously in violation of her rights under 42 U.S.C. § 1983.

97.     The Defendants' acts proximately caused the constitutional violations and other injuries alleged above, including, but not limited to pain and suffering, mental anguish, legal expenses, loss of income, as alleged herein.

**WHEREFORE,** Plaintiff Kayley Sprout prays that this Court:

A.      Order Defendants to reinstate Plaintiff to her prior position;

19

B.      Award Plaintiff compensatory damages, back pay, front pay, pre-judgment interest, lost future wages, and future pecuniary damages;

C.      Award damages against the individual Defendants for emotional distress, humiliation, and embarrassment;

D.      Enter a declaratory judgment that Defendants' actions violated the First and Fourteenth Amendments to the United States Constitution;

E.      Retain jurisdiction of this case until such time as it is assured that the Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

F.      Award punitive damages against Defendants;

G.      Award Plaintiff reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

H.      Grant such further and other relief as this Court deems just and proper.

**Count VIII**
**Section 1985(3) Conspiracy against Individual Defendants**

98.      Plaintiff restates and realleges by reference paragraphs 1 through 57 above as though fully set forth herein against all Defendants.

99.      As a female, Plaintiff is part of a protected class.

100.      Plaintiff announced her pregnancy to Defendants in July 2017. As a pregnant woman, she was part of an additional protected class from at least July 2017 through the date of her termination.

101.      Defendants, acting together and under color of law, reached an understanding and agreement, engaged in a course of conduct, and otherwise conspired

among and between themselves and with other unnamed and/or unknown co-conspirators, to deprive Plaintiff of her right to equal protection of the law.

102.    In furtherance of the conspiracy, the individual defendants committed the overt acts alleged herein including, but not limited to, extending Plaintiff's probationary period, revoking her access to the evidence room, revoking her access to a squad car, instructing her to adhere to a dress code other than her police uniform, assigning her to desk duty, and terminating Plaintiff on the basis of her gender and pregnancy in violation of her right to equal protection pursuant to the Fourteenth Amendment.

103.    The Defendants' acts proximately caused the constitutional violations and other injuries alleged above, including, but not limited to pain and suffering, mental anguish, legal expenses, loss of income, as alleged herein.

**WHEREFORE,** Plaintiff Kayley Sprout prays that this Court:

A.      Order Defendants to reinstate Plaintiff to her prior position;

B.      Award Plaintiff compensatory damages, back pay, front pay, pre-judgment interest, lost future wages, and future pecuniary damages;

C.      Award damages against the individual Defendants for emotional distress, humiliation, and embarrassment;

D.      Enter a declaratory judgment that Defendants' actions violated the First and Fourteenth Amendments to the United States Constitution;

E.      Retain jurisdiction of this case until such time as it is assured that the Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

F.      Award punitive damages against Defendants;

G.      Award Plaintiff reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

H.      Grant such further and other relief as this Court deems just and proper.

<u>**Count IX**</u>
**Violation of the Illinois Whistleblower Act Against All Defendants**

104.    Plaintiff restates and realleges by reference paragraphs 1 through 57 above as though fully set forth herein against all Defendants.

105.    As set forth above. Plaintiff reported violations of state or federal law, rule or regulation to the Village and government officials including then-Mayor Jason Collins and the Village Board of Trustees, along with the Illinois State Police.

106.    Plaintiff had reasonable cause to believe that the actions of Chief Sparks were a violation of state or federal law, rule, or regulation.

107.    Defendants retaliated by first extending her probationary period by one month and then by eventually terminating her because Plaintiff reported violations of state or federal law, rule or regulation as set forth above.

108.    Defendants also threatened Plaintiff with retaliation in violation of 740 ILCS 174/20.2 when they threatened to reprimand her for reporting her suspicion of Chief Sparks' misconduct directly to then-Mayor Jason Collins, told her that the "union won't protect [her]", told her that "things will be changing", and asking her how she will earn the trust of Defendants if she is retained as an employee.

109.    Each Defendant made, took part in, assisted in, and/or participated in the decision to retaliate against Plaintiff.

110.    Plaintiff had reasonable cause to believe that the actions of Chief Sparks, Defendant O'Grady and the Village were a violation of state or federal law, rule or regulation.

111.    Plaintiff was subjected to retaliation in violation of rights guaranteed to her by the Illinois Whistleblower Act, 740 ILCS 174/15 and 740 ILCS 174/20.2, and she has suffered substantial losses as a result, including but not limited to lost wages and benefits, mental and emotional anguish, and embarrassment and humiliation.

**WHEREFORE,** Plaintiff Kayley Sprout prays that this Court:

A.      Enter judgment declaring that Defendants have violated the Illinois Whistleblower Act;

B.      Permanently enjoin Defendants from continuing to violate Plaintiff's rights under the Illinois Whistleblower Act, by ordering Defendants to (1) stop engaging in retaliation; and (2) adopt employment practices and policies in accordance with the requirements of Illinois law;

C.      Order Defendants to reinstate Plaintiff to her prior position or front pay in lieu of reinstatement;

D.      Award Plaintiff compensatory damages, back pay, pre-judgment interest, lost future wages, and future pecuniary damages;

E.      Award Plaintiff reasonable attorneys' fees and costs as a result of Defendants unlawful conduct; and

F.      Grant such further and other relief as this Court deems just and proper.

**Count X**
**State Law Retaliatory Discharge Against the Village**

112.    Plaintiff restates and realleges by reference paragraphs 1 through 57 above as though fully set forth herein against the Village.

113.    As set forth above, Plaintiff reported violations of state or federal law, rule or regulation to the Village and government officials including then-Mayor Jason Collins and the Village Board of Trustees, along with the Illinois State Police.

114.    Plaintiff had reasonable cause to believe that the actions of Chief Sparks were a violation of state or federal law, rule, or regulation.

115.    Defendants terminated Plaintiff in retaliation for her reporting of violations of state or federal law, rule or regulation as set forth above.

116.    Plaintiff had reasonable cause to believe that the actions of Chief Sparks, Defendant O'Grady and the Village were a violation of state or federal law, rule or regulation.

117.    The Village's retaliatory discharge of Plaintiff violates a clear mandate of public policy of public safety and police accountability, in that the Chief's violation of Illinois criminal law is a matter that affects the citizens of the Village collectively.

118.    Plaintiff suffered substantial losses as a result of the Village's retaliation, including but not limited to lost wages and benefits, mental and emotional anguish, and embarrassment and humiliation.

**WHEREFORE,** Plaintiff Kayley Sprout prays that this Court:

A.    Permanently enjoin the Village from continuing to violate Plaintiff's whistleblower rights, by ordering the Village to (1) stop engaging in retaliation; and (2)

adopt employment practices and policies in accordance with the requirements of Illinois law;

      B.      Order the Village to reinstate Plaintiff to her prior position;

      C.      Award Plaintiff compensatory damages, back pay, front pay, pre-judgment interest, lost future wages, and future pecuniary damages;

      D.      Award Plaintiff reasonable attorneys' fees and costs as a result of Defendants unlawful conduct; and

      E.      Grant such further and other relief as this Court deems just and proper.

Respectfully submitted,

KAYLEY SPROUT

By:  s/ Stephen R. Miller
         One of Her Attorneys

Stephen R. Miller (smiller@robbins-schwartz.com)
Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd.
55 West Monroe Street, Suite 800
Chicago, IL 60603
312.332.7760
312.332.7768 – Facsimile

## **PROOF OF SERVICE**

     I, Stephen R. Miller, an attorney, certify that the foregoing Second Amended Complaint was electronically filed with the Clerk of the Court using the CM/ECF system on this 3rd day of December, 2018, which constitutes service on all counsel of record, registered filing users, pursuant to Fed. R. Civ. P. 5(b)(2)(D) and L.R. 5.9.


               /s/ Stephen R. Miller