E-FILED
Wednesday, 20 February, 2019 01:47:14 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

KAYLEY SPROUT,

        Plaintiff,

    v.

VILLAGE OF HUDSON, a municipal
corporation, DALE SPARKS, in his individual
capacity, ALAN MEISSNER, in his individual
capacity, ALLISON BRUTLAG, in her
individual capacity, DAVE BRUTLAG, in his
individual capacity, SARA HILL, in her
individual capacity, PHIL MORRIS, in his
individual capacity, CALEB POST, in his
individual capacity, BETTY SCANLON, in her
individual capacity, KERRY TUDOR, in his
individual capacity, and PAT O'GRADY, in
his individual capacity,

        Defendants.

No. 18 CV 1322

Judge James E. Shadid

Jury Trial Demanded

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS**
**COUNTS I-VII OF PLAINTIFF'S THIRD AMENDED COMPLAINT**

Plaintiff filed a Third Amended Complaint alleging (I) First Amendment retaliation in violation of 42 U.S.C. § 1983; (II) Gender discrimination in violation of 42 U.S.C. § 1983; (III) Pregnancy discrimination in violation of 42 U.S.C. § 1983; (IV) *Monell* violation of 42 U.S.C. § 1983 against the Village; (V) *Monell* violation of 42 U.S.C. § 1983 for Failure to Train; (VI) Conspiracy in violation of 42 U.S.C. § 1983; (VII) Violation of the Illinois Whistleblower Act; (VIII) State Law Retaliatory discharge; (IX) Pregnancy Discrimination in violation of the Illinois Human Rights Act; (X) Failure to Accommodate Pregnancy in violation of the Illinois Human Rights Act; (XI) Gender Discrimination in Violation of the Illinois Human Rights Act; and (XII) Retaliation in violation of the Illinois Human Rights Act.

Defendants have moved to dismiss Counts I-VII of Plaintiff's Third Amended Complaint ("Complaint") and requested an extension of time to respond to Counts VIII-XII on behalf of the Village of Hudson ("the Village"). Plaintiff does not object to the Village's request for an extension

to respond to Counts VIII-XII, but for the reasons set forth below, this Court should deny Defendants' motion as to Counts I-VII.

## BACKGROUND

Plaintiff, Kayley Sprout ("Plaintiff"), began working for the Village of Hudson ("the Village") in March 2016 as a police officer (Compl. ¶33). In March 2017, Plaintiff received only positive ratings in her performance evaluation without any negative comments (Compl. ¶35). In April 2017, Plaintiff informed then-Mayor Jason Collins ("the Mayor") of her suspicion that the Chief of Police ("Sparks") had tipped off a suspect prior to the execution of a search warrant, so that the suspect could remove guns from the home that was the target of the search warrant (Compl. ¶35). In response, the Mayor asked Plaintiff to attend a Board of Trustees ("Board") Meeting to discuss her concern regarding Sparks (Compl. ¶38). The Board is comprised of all individual Defendants, other than Sparks ("the Board" or "Board Members") (Compl. ¶¶15-32).

When the Board became aware that Plaintiff was present to report her suspicion of Sparks' criminal conduct, they moved into closed session and asked Plaintiff to leave (Compl. ¶40). During the closed session, the Mayor told the Board what Plaintiff had told him about Sparks' misconduct (Compl. ¶41). In response, the Board condemned Plaintiff for not following the chain of command in reporting her concerns, and suggested that she be reprimanded (Compl. ¶42). The Board ignored the Mayor's recommendation to not re-appoint Sparks as Chief of Police and said they would do whatever it takes to reappoint him (Compl. ¶43). Sparks was reappointed shortly thereafter, and the Mayor resigned the next day (Compl. ¶¶44-45).

After Plaintiff reported Sparks to the Board and Mayor, her probationary period was extended, "because of this investigation of [Sparks];" she was questioned by Defendants about why she did not follow the chain of command, why she did not trust Sparks, how she can be trusted going forward if she is "retained," and what she knew about the Mayor's resignation; she received a handout from Defendants containing the definitions of "loyalty" and "chain of command;" and was told that "things would be changing" and that the "union would not protect"

her (Compl. ¶¶47-49, 51). In June 2017, after another officer was terminated following his complaint of Sparks, Plaintiff went to the Illinois State Police ("ISP") to report Sparks' misconduct (Compl. ¶¶53, 55). ISP subsequently interviewed Sparks (Compl. ¶57).

Plaintiff's working conditions further deteriorated after she notified Defendants of her pregnancy and requested a 25-pound lifting restriction in July 2017 (Compl. ¶¶58-59). Plaintiff was reassigned to desk duty, denied access to squad cars, denied transfer to the day shift, denied access to the evidence room, forbidden from wearing her police uniform while at work, and received a notice that the Village may terminate her employment because of her pregnancy (Compl. ¶¶61-62, 65). After receiving the notice that she may be terminated, Plaintiff complained to Sparks of pregnancy discrimination (Compl. ¶66). Defendants O'Grady and Sparks had previously told Plaintiff that they did not know that any law existed prohibiting pregnancy discrimination (Compl. ¶59). Following Plaintiff's complaint, she was denied IMRF disability benefits and found a printout on her desk that stated the definition of "loyalty" (Compl. ¶¶67-68). On September 5, 2017, Plaintiff was terminated (Compl. ¶69).

## ARGUMENT

The Supreme Court established "two easy-to-clear hurdles" for a complaint in federal court: (1) it must provide sufficient notice to enable the defendant to investigate and prepare a defense, and (2) the allegations must suggest a plausible—not merely speculative—right to relief. *EEOC v. Concentra Health Servs., Inc.,* 496 F.3d 773, 776 (7th Cir. 2007) *citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Courts have interpreted the plausibility standard to mean that "the plaintiff must give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). "[T]he court will ask itself could these things have happened, not *did* they happen." (Emphasis in original). *Id. Iqbal*

clarified that "legal conclusions can provide the framework of a complaint" so long as they are "supported by factual allegations." 556 U.S. at 679.

I.   **Plaintiff's Speech Warrants Constitutional Protection Because She Spoke as a Private Citizen, and Defendants Were Aware of her Complaints (Count I).**

In order to establish a claim for First Amendment retaliation, a public employee must prove: (1) her speech was constitutionally protected, (2) she suffered a deprivation likely to deter speech, and (3) her speech was at least a motivating factor in the employer's action. *Peele v. Burch*, 722 F.3d 956, 959 (7th Cir.2013). Defendants dispute only the first element, arguing that Plaintiff's speech is not subject to constitutional protection because she spoke as a public employee pursuant to her official police duties when she reported Sparks' misconduct to the Board, Mayor, and ISP (Def. Br., p. 9). While generally true that public employees speaking pursuant to their official duties are speaking as employees, not as private citizens, speech "does not lose protection simply because it 'concerns' or is 'acquired by virtue of [the citizen's] public employment.'" *Kristofek v. Vill. of Orland Hills*, 832 F.3d 785, 793 (7th Cir. 2016) *quoting Lane v. Franks,* 134 S.Ct. 2369, 2379 (2014). The relevant inquiry is whether the speech is made *pursuant to*, not merely *about*, the plaintiff's public employment. *Forgue v. City of Chicago*, 873 F.3d 962, 967 (7th Cir. 2017).

Despite Defendants' contention that Plaintiff's complaints were made internally and pursuant to her professional duties, Plaintiff was under no obligation or policy to report the misconduct of the Police Chief to the Mayor, Board, or ISP. In fact, the Board condemned Plaintiff for not following the established "chain of command" in reporting her concerns, and suggested that she be disciplined (Compl. ¶42). If an employee "reports misconduct outside established channels or in violation of official policy, she speaks as a private citizen and her speech is constitutionally protected." *Spalding v. City of Chi.*, 186 F. Supp. 3d 884, 904–05 (N.D. Ill. 2016). Defendants provide no support for the assertion that it was part of Plaintiff's job to report to the Board or the Mayor that the Chief of Police may have tipped off a suspect prior to the execution

of a search warrant so that the suspect could remove guns from the home that was the target of the search warrant (Compl. ¶35). The fact that Plaintiff's report of Sparks' criminal behavior bore some relation to the subject matter of her job as a police officer is not dispositive. *Garcetti*, 547 U.S. at 422. For the speech to lack constitutional protection, it must constitute "work product" that has been "commissioned or created by the employer." *Id*. The Village did not commission Plaintiff with the responsibility of surveilling and reporting criminal behavior of the Police Chief to the Board, Mayor, or ISP.

For these reasons, Defendants' supporting case law is misplaced. In *Forgue*, the court found that plaintiff's speech was not entitled to First Amendment protection because he only complained internally to the Internal Affairs Division ("IAD") regarding grievances that were "internally connected" with his job; namely, that the department was engaging in retaliatory behavior due to his complaints to IAD and his reputation as an officer who follows rules. 873 F.3d at 968. Moreover, plaintiff's speech in *Forgue* was *required* by CPD General Order. *Id*. at 967. In *Roake v. Forest Pres. Dist. Of Cook Cty.*, the court held that a police officer spoke as a public employee when he *only* reported his complaints internally. 849 F.3d 342, 346 (7th Cir. 2017). In *Kubiak v. City of Chicago*, the court held that a police officer's internal complaints about a co-worker yelling at her were made as a public employee because her complaints were intimately connected with her job, in that it "reflected an employee's attempt to improve her work environment," and because she only complained internally to IAD and her direct supervisor. 810 F.3d 476, 481-82 (7th Cir. 2016).

Conversely, Plaintiff's complaints of Sparks were not limited to the internal realms of the Village's Police Department. Plaintiff complained to the Board (Compl. ¶¶38-41), the Mayor (Compl. ¶35), and ISP Investigator Kim Cessna (Compl. ¶55), and did so while off-duty and out of uniform (Compl. ¶¶39, 56) *contra Mills v. City of Evansville, Ind.*, 452 F.3d 646, 648 (7th Cir. 2006) (holding that plaintiff spoke in her capacity as a public employee when she was "on duty, in uniform..."). Moreover, Plaintiff's speech was not required by General Order and was not

5

intimately connected with her job as an attempt to improve her work environment. Rather, Plaintiff spoke to her belief that Sparks had engaged in criminal conduct (Compl. ¶¶76-77).

Courts have been careful to conclude that employees have spoken pursuant to their official duties when the speech concerns allegations of public corruption. *Kristofek,* 832 F.3d at 793. To do so would be to place Plaintiff and other public employees who witness misconduct in the position of choosing between the obligation to testify truthfully and the desire to avoid retaliation and keep their jobs. *Lane*, 134 S.Ct. at 2380; *see also Waters v. Churchill*, 511 U.S. 661, 674, 114 S.Ct. 1878 (1994) ("Government employees are often in the best position to know what ails the agencies for which they work"). Public employees, like Plaintiff, cannot be deprived of First Amendment protection due merely to the title of their profession.

Defendants' attempt to heighten the pleading standard by claiming that Plaintiff's Complaint lacks facts showing that Defendants were aware of Plaintiff's complaints is also flawed. (Def. Br., p. 9-10). In doing so, Defendants willfully ignored Plaintiff's allegations that all Board members knew of her complaints regarding Sparks (Compl. ¶¶40-41), all Board members knew that she had complained to the Mayor (Compl. ¶¶40-41), and the ISP contacted Sparks about the reported misconduct following Plaintiff's meeting with the ISP Investigator (Compl. ¶57). These allegations, read in a light most favorable to Plaintiff, are sufficient for the Court to infer that all individual Defendants were aware of Plaintiff's complaints about Sparks. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) ("We construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in her favor."). Plaintiff has plead sufficient facts establishing that Plaintiff spoke as a private citizen regarding her suspicion of Sparks' criminal misconduct, and that Defendants were aware of her complaints. Defendants' Motion to Dismiss Count I should, therefore, be denied[1].

---

[1]Plaintiff concedes that her request for reinstatement in Counts I-III and VI should be stricken, as the Defendants sued in their individual capacity lack the authority to reinstate. Plaintiff preserves her request for front pay in lieu of reinstatement.

**II.    Plaintiff has Sufficiently Pled How Each Defendant Personally Participated in Gender and Pregnancy-based Discrimination in Order to Properly State a Claim under §1983 (Counts II and III).**

Plaintiff has properly pled how each individual Defendant is liable to her. While a plaintiff must plead facts that are sufficient to establish that an individual defendant caused or participated in a constitutional deprivation, "the Supreme Court has stated that the pleading standard for employment discrimination is different from the evidentiary burden a plaintiff must meet at summary judgment or trial." *Wuerffel v. Cook Cty. Sheriff's Office*, No. 14 C 3990, 2016 WL 1660497, at *10 (N.D. Ill. Apr. 27, 2016). Accordingly, the Seventh Circuit reaffirmed the minimal pleading standard for simple claims of discrimination under §1983. *Tamayo*, 526 F.3d at 1084 ("[e]ven after *Bell Atlantic* ... in order to prevent dismissal under Rule 12(b)(6), a complaint alleging sex discrimination need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her sex").

In discrimination cases under §1983, the complaint merely needs to give the defendant sufficient notice to enable him to investigate and prepare a defense. *Tamayo*, 526 F.3d at 1085. Here, Plaintiff pled that she was a member of a protected class (Compl. ¶¶82, 88), that she was qualified (Compl. ¶34), that she suffered adverse employment actions when Defendants severely altered her job responsibilities before terminating her employment (Compl. ¶¶83, 89), and that similarly-situated persons not in the protected class were treated more favorably (Compl. ¶¶85, 91). Alleging these four elements is enough for Plaintiff to prevail under §1983 at the dismissal stage. *McGowan v. Deere & Co.,* 581 F.3d 575, 579 (7th Cir. 2009).

Moreover, liability attaches to each individual Defendant because each individual Defendant caused or participated in the constitutional deprivation. *Hildebrandt v. Ill. Dep't of Nat. Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003). Sparks extended Plaintiff's probationary period, reassigned her to desk duty, refused her access to a squad car, refused to move Plaintiff to day shift, prohibited her from wearing her police uniform while at work, revoked Plaintiff's access to the evidence room and denied her subsequent requests for access, denied Plaintiff's requests to

complete work assignments, took no action in response to her complaints of discrimination, and terminated Plaintiff's employment (Compl. ¶¶47, 61-62, 66, 69, 71). Defendant Hill denied Plaintiff IMRF disability benefits for her pregnancy and then purposefully delayed Plaintiff's receipt of IMRF disability benefits after Plaintiff's termination (Compl. ¶¶68, 73). Defendants Morris and O'Grady worked in conjunction with Sparks to extend Plaintiff's probationary period and revoke her access to the evidence room (Compl. ¶47). Defendants Post and O'Grady were also present with Sparks during Plaintiff's termination meeting (Compl. ¶70). These allegations far exceed the minimal conclusory allegations required of §1983. *See Michalowski v. Rutherford*, 82 F. Supp. 3d 775, 795 (N.D. Ill. 2015) (plaintiff sufficiently alleged gender-based violation under §1983 with conclusory allegations that wrongs were "based upon Plaintiff's gender").

The Village's Municipal Code ("Code") further authorized Defendants' input in personnel decisions with respect to Plaintiff's employment as a matter of law. Per the Village Code, the police department is to be comprised of police officers "as may be provided by the [Board Members]", and the Board may receive recommendations from the Chief of Police regarding any mater related to "police problems" (Ordinance 1246, 5-1-1, 5-1-3(G)) (eff., Jan. 5, 2010). Because the Village Code grants the Board the authority to make decisions regarding police department personnel and because Defendants Sparks, O'Grady, and Post were participants in Plaintiff's termination meeting, Plaintiff has sufficiently established Defendants' personal involvement in the decision to terminate Plaintiff.

Lastly, Defendants argue that no actions taken by the individual Defendants qualify as "materially adverse" other than their firing Plaintiff. However, a materially adverse change might be indicated by "significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Oest v. Ill. Dep't of Corrs.*, 240 F.3d 605, 612–13 (7th Cir.2001). The Seventh Circuit has classified materially adverse employment actions into three categories, all of which are implicated here: (1) where the employee's compensation, benefits, or other financial terms of employment are diminished (*e.g.* termination); (2) where a lateral transfer

without a change in financial terms significantly reduces the employee's career prospects by preventing him from using the skills in which she is trained and experienced; or (3) where conditions in which the employee works are changed in a way that subjects her to humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in her workplace environment—an alteration that can fairly be characterized as objectively creating a hardship. *Hallmon v. Sch. Dist. 89, Cook Cty., IL*, 911 F. Supp. 2d 690, 699 (N.D. Ill. 2012).

Category one adverse actions occurred when Plaintiff was terminated (conceded by Defendants at Def. Br., p. 11), and when Defendants denied and delayed Plaintiff's receipt of IMRF disability benefits (Compl. ¶¶68, 73). Plaintiff suffered category two adverse actions when she was reassigned to desk duty, refused access to her squad car, and kept off the day shift which prevented her from using the skills in which she was trained and experienced (Compl. ¶¶61-62). The third category of materially adverse actions is implicated by Defendants' negative and humiliating workplace alterations when they prohibited Plaintiff from wearing her uniform while at work, revoked her access to the evidence room, denied her request to complete alternative work assignments while subject to her lifting restriction, placed a print-out of the definition of "loyalty" on her desk, and refused to take any action in response to her complaints of discrimination (Compl. ¶¶61-62, 66-67, 71). The breadth of Plaintiff's allegations far exceeds Seventh Circuit requirements. *See Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 635 (7th Cir. 2013) ("Although the complaint does not provide a lot of factual detail … the allegations are sufficient to plead that the denial of a transfer from the midnight shift as well as [plaintiff's] treatment on that shift are materially adverse employment actions").

Therefore, Defendant's Motion to Dismiss Counts II and III should be denied.

### III. Plaintiff Has Provided Enough Evidence to Demonstrate that Each Individual Defendant has Policymaking Authority Sufficient to Bind the Village for *Monell* Constitutional Violations under §1983 (Count IV).

As a threshold issue, a motion to dismiss is generally disfavored as the proper stage to determine whether defendants actually have such policymaking authority. *McCormick v. City of*

*Chicago*, 230 F.3d 319, 325 (7th Cir.2000); *Manos v. Caira*, 162 F.Supp.2d 979, 993 (N.D.Ill.2001) (denying motion to dismiss and acknowledging that under certain facts, police chief may have final policymaking authority); *Christopher v. City of Steger*, No. 95 C 593, 1995 WL 290367, at *3 (N.D.Ill. May 11, 1995) (denying motion to dismiss municipal liability claim)*; Sailsbery v. Vill. of Sauk Vill.*, No. 15 C 10564, 2016 WL 4701446, at *9 (N.D. Ill. Sept. 8, 2016) ("summary judgment is a better stage to determine these questions than the motion to dismiss stage"). The question for the Court at this stage is not determining the final policymakers for the Village, but whether Plaintiff has successfully pled that the individual Defendants had policymaking authority with respect to the discriminatory behavior. *Drager v. Vill. of Bellwood*, 969 F. Supp. 2d 971, 982 (N.D. Ill. 2013).

This question, for claims of §1983 municipal liability, is analyzed under a "quite liberal" standard. *Doe v. Hudgins*, No. 97 C 0106, 1998 WL 474122, at *4 (N.D. Ill. Aug. 5, 1998). In terms of what is sufficient to survive a motion to dismiss for allegations of municipal liability under §1983, a federal court may not hold a plaintiff to a heightened pleading standard. *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 113 S.Ct. 1160 (1993). Beyond the requirement that a complaint include only "a short and plain statement of the claim showing that the pleader is entitled to relief," it is not required that Plaintiff set out in detail the facts upon which she bases her claims. *Id*; See Fed. R. Civ. P. 8(a)(2). Not only has Plaintiff specifically pled that the individual Defendants are final policymakers with decision-making authority (Compl. ¶¶14, 16, 18, 20, 22, 24, 26, 28, 30, 32, 95), but she has further alleged how each Defendant was a moving force behind the constitutional injury. (Compl. ¶¶40, 43, 46-49, 51-53, 59, 61-62, 64-73). These allegations are sufficient to establish *Monell* liability based on unconstitutional acts of final policymakers. *See Wuerffel*, 2016 WL 1660497, at *9 (alleging that an individual was among those responsible for plaintiff's constitutional injury was sufficient to defeat a motion to dismiss).

As a matter of law, the Village Code further establishes the individual Defendants' policymaking authority. *See Sailsbery*, 2016 WL 4701446, at *4 (determining policymaking figures

per the language of the Village municipal code). The Village Code grants to the Board the authority to enact, publish, and adopt provisions of the Village Code, interpret the Village Code in compliance with the "true intent and meaning" of the Board, deem the police department "an executive department of the village" consisting of "police officers as may be provided by the [Board]," and approve all rules and regulations of the police department (Ordinance 1286, Sections 1, 1-1-1, 5-1-1, 5-1-3, 8). The Village Code also confers authority to Sparks over the entire police force to execute the orders of the Board, and make recommendations to the Board regarding any matter related to "police problems" (Ordinance 1246, Sections 5-1-3, 5-1-3(E),(G)). Accordingly, and as clearly defined by statute, each individual Defendant retains broad discretionary powers that he or she may wield as he or she deems necessary, including the authority to set policy for personnel decisions and lend meaningful input into governmental decision-making, *i.e.* policymaking authority.

Moreover, Defendants have not carried their burden of showing that the individual Defendants are *not* final policymakers for the Village. As the Seventh Circuit has explained, "the defendants have the burden on a motion to dismiss to establish the legal insufficiency of the complaint." *Yeksigian v. Nappi*, 900 F.2d 101, 104–05 (7th Cir.1990). Absent a clear showing by the Defendants that they are not final policymaking authorities, it would be error for the Court to dismiss Plaintiff's Complaint. *Yeksigian*, 900 F.2d at 104-05. Defendants did not raise state or local law, let alone carry that burden to establish that no individual Defendant was a final policymaker as a matter of state or local law or as a matter of custom or usage. *See Harris v. Town of Cicero*, No. 12 C 601, 2012 WL 4434720, at *2–3 (N.D. Ill. Sept. 24, 2012) (denying motion to dismiss where defendants failed to carry burden of showing that defendants are not final policymakers).

Defendants' demand for additional facts as to how Defendants knew of Sparks' behavior toward Plaintiff is inappropriate at the motion to dismiss stage. *See McCormick*, 230 F.3d at 324 (*citing Leatherman*, 507 U.S. at 168–69) (the Federal Rules of Civil Procedure "do not permit the

courts to dismiss §1983 municipal liability claims for lack of factual specificity.") Rather, "federal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims." *Id*. In the absence of a heightened pleading requirement for §1983 municipal liability cases, even conclusory allegations would be sufficient to put the Defendants on notice of the claims against them and to withstand a motion to dismiss. *Id*.

Besides, the Board often participated jointly in Sparks' actions with respect to Plaintiff's employment: Defendant O'Grady signed Plaintiff's performance evaluation alongside Sparks (Compl. ¶34); Defendants O'Grady and Post were copied on emails from Sparks to the police department establishing departmental policy (Compl. ¶34); Defendants Morris and O'Grady were present with Sparks and involved in the decision to extend Plaintiff's probationary period "because of the investigation against [Sparks]" (Compl. ¶47); Defendants Morris and O'Grady questioned Plaintiff about her loyalty, trust, and her knowledge of the Mayor's resignation, told Plaintiff that the union would not protect her and "things would be changing," and handed Plaintiff departmental policies citing to the definitions of loyalty, truthfulness, and the chain of command (Compl. ¶¶48-49, 51-52); Defendant O'Grady was with Sparks when Plaintiff notified them of her pregnancy and requested an accommodation (Compl. ¶59); and Defendants Post and O'Grady were with Sparks when they terminated Plaintiff (Compl. ¶70).

Even if the Board Members were not intrinsically engaged in the same actions as Sparks — which they clearly were — their receipt of multiple complaints regarding Sparks' misconduct should have put them on notice of his behavior (Compl. ¶¶36, 40-43, 45, 54-55). In fact, the Mayor felt so strongly about the Board's unwillingness to address Sparks' disqualifications that he resigned the day after the Board re-appointed Sparks as Police Chief (Compl. ¶45). Plaintiff's Complaint contains allegations that, at the very least, give rise to a strong inference that the Board Members knew of Sparks' behavior toward Plaintiff.

Finally, the clarity that Defendants seek as to whether Plaintiff is alleging that the wrongful acts by Defendants were done due to her gender, her pregnancy, or her reporting of Sparks'

wrongful conduct is afforded by Count IV wherein Plaintiff alleges that the "individual Defendants discriminated and retaliated against Plaintiff in violation of her rights under *the First and Fourteenth Amendments*" (emphasis added) (Compl. ¶94). As such, Plaintiff has unambiguously pled that the individual Defendants engaged in pregnancy and gender-based discrimination, as well as retaliation due to Plaintiff's reporting wrongful conduct.

Because Plaintiff has adequately pled how the individual Defendants have created liability for the Village, Defendants' Motion to Dismiss Count IV should be dismissed.

**IV.  Plaintiff has Sufficiently Established Deliberate Indifference on the Part of the Village to Sustain a *Monell* Failure to Train Claim under §1983 (Count V).**

A failure to train claim may be the basis for liability under §1983 when the plaintiff can show deliberate indifference on the part of the local governmental entity. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989). Deliberate indifference can be established in one of two ways: (1) When a municipality fails to provide adequate training to handle a recurring situation in light of obvious potential for a constitutional violation; or (2) When a municipality fails to provide further training in response to constitutional violations. *Dunn v. City of Elgin, Illinois*, 347 F.3d 641, 646 (7th Cir.2003); *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1029–30 (7th Cir.2006).

Plaintiff has demonstrated deliberate indifference through both methods. First, Plaintiff pled recurring acts of gender and pregnancy-based discrimination, including but not limited to, when her probationary period was extended, she was reassigned to desk duty, she was prohibited from accessing the squad car, her accommodation request was denied, she was prohibited from wearing her police uniform while at work, she was banned from accessing the evidence room and denied subsequent requests for access, her disability benefits were denied and then purposefully delayed, her request to complete alternative work assignments was denied, she received notice of potential termination after she revealed her pregnancy, and when she was terminated (Compl. ¶¶47, 61-62, 64-65, 68-69, 71, 73). Despite the obvious potential for a constitutional violation, especially in light of the recurring discriminatory and retaliatory behavior, the Village never

mandated discrimination training. Second, Plaintiff alleged that the Village failed to provide further training after Plaintiff complained directly to Sparks about the pregnancy discrimination she had been experiencing (Compl. ¶66), or after Defendants Sparks and O'Grady admitted they were unaware that any pregnancy discrimination laws existed (Compl. ¶59).

Even if Plaintiff had not demonstrated Defendants' persistent unconstitutional activity, she would nonetheless be permitted to proceed with her claim under the inference that an employee's conduct exemplifies the Village's failure to train under a single-incident theory. In *Potochney v. Doe*, the Court denied a motion to dismiss plaintiff's failure to train claim insofar as plaintiffs "do not have access to information that would allow them to plead that the failure to train was applied to multiple employees or caused more than a single violation." No. 02C1484, 2002 WL 31628214, at *3 (N.D. Ill. Nov. 21, 2002). The Supreme Court similarly noted that a pattern of violations might not be necessary to show deliberate indifference when the unconstitutional consequences of failing to train "could be so patently obvious that a city could be liable under §1983 without proof of a pre-existing pattern of violations." *Connick v. Thompson*, 131 S.Ct. 1350, 1361, 179 L.Ed.2d 417 (2011). This single-incident theory would take effect when a complete lack of training exists with respect to basic constitutional limitations. *Connick,* 131 S.Ct. at 1363. Plaintiff's Complaint addresses this very type of general failure to advise or educate Defendants on the constitutional limitations of pregnancy discrimination and accommodation. Plaintiff did not allege that the Village's employees were not trained about a particular situation that might arise during the course of employment, but that the Police Chief and Trustee of Police on the Village's Board lacked any training or knowledge with respect to workplace pregnancy discrimination (Compl. ¶59).

Contrary to Defendants' claim of threadbare allegations, Plaintiff's failure to train claim is governed only by the notice pleading standards set forth in Fed. R. Civ. P. 8(a)(2). *See Homeyer v. Stanley Tulchin Assoc., Inc.,* 91 F.3d 959 (7th Cir. 1996) (notice pleading is sufficient for this federal statutory claim). Plaintiff need not plead facts; she may plead conclusions, so long as those conclusions provide a defendant with at least a minimal notice of the claim. *Jackson v.*

*Marion Cty.*, 66 F.3d 151, 154 (7th Cir. 1995); *see also, Leatherman*, 507 U.S. 163 (1993) (no heightened pleading requirement for allegations of municipal liability). A failure to train claim, arguably, requires less factual substantiation, as it requires proof of a negative. "The very essence of the allegation is that the City didn't do anything. So it is difficult to conceive of the 'facts' that a plaintiff would allege when the very allegation is that the city did nothing at all." *Maldonado v. City of Hammond, Ind.*, No. 214CV310-PPS, 2015 WL 1780133, at *2 (N.D. Ind. Apr. 20, 2015). By citing only to Plaintiff's use of the phrases "deliberate indifference" and "failure to train," Defendants deliberately disregard Plaintiff's incorporation of eighty-five (85) paragraphs of factual support preceding her §1983 *Monell* Failure to Train claim (Compl. ¶¶99-100). Therefore, Defendants' Motion to Dismiss Count V must also fail.

**V.      An Exception Applies to Plaintiff's §1983 Conspiracy Claim to Bar Application of the Intra-corporate Conspiracy Doctrine (Count VI).**

Courts have held that "all that is required to state a claim of conspiracy is a simple pleading of facts from which a conspiracy may be inferred." *McDonough v. City of Chicago, Dep't of Water Mgmt.*, No. 06C2732, 2008 WL 2309709, at *5 (N.D. Ill. June 2, 2008). A plaintiff "is not required to plead with exact specificity a conspiracy to deprive [her] of [her] constitutional rights, but rather just enough circumstantial evidence [that] may provide adequate proof of a conspiracy." *McDonough*, 2008 WL 2309709 at *5. In any event, Plaintiff's Complaint does not rest on conclusory allegations, as it details enough retaliatory acts collectively committed by multiple Defendants over a span of several months to support the reasonable inference that Defendants agreed to act together to violate Plaintiff's constitutional rights for her reporting of Sparks' misconduct (Compl. ¶¶47-49, 51-52, 61-62, 64-65, 67-69, 71-73).

Defendants also argue that Plaintiff's conspiracy claim should be dismissed under the intra-corporate conspiracy doctrine, which holds that a corporation or government entity cannot conspire with itself, and precludes members of the same entity from becoming conspirators when acting within the scope of their authority. *Wright v. Ill. Dep't of Children and Family Serv.*, 40 F.3d

1492, 1508 (7th Cir.1994). However, because the purpose of the doctrine is to protect only routine and lawful business decisions, the Seventh Circuit recognizes several exceptions: (1) where employees are shown to have been motivated by personal bias; or (2) where conspiracy was part of some broader discriminatory pattern or permeated ranks of the organization's employees. *Hartman v. Bd. of Trs.*, 4 F.3d 465, 470 (7th Cir.1993).

The first exception applies here, as the Complaint alleges retaliation by individual Defendants, pursuant to an understanding and agreement, for Plaintiff's reporting of criminal misconduct to government officials (Compl. ¶106). For conspiracy allegations "involving a classic charge of retaliation, the underpinnings of the intra-corporate conspiracy doctrine do not apply." *McDonough,* 2008 WL 2309709 at *4; *see Fairley v. Andrews*, 300 F.Supp.2d 660, 668-69 (N.D.Ill.2004). In this case, Plaintiff alleged that Defendants conspired to deprive her of her constitutional rights (Compl. ¶105) for the illicit purpose of retaliating against her for reporting the misconduct of Sparks, whom the individual Defendants desperately wanted to re-appoint (Compl ¶¶43, 105-106). As the Court has previously held, "[a]greeing to harass and/or retaliate against an employee is not within the scope of Defendants' authority." *Gross v. Town of Cicero*, 2006 WL 288262 at *12 (N.D. Ill., Feb.1, 2006). Accordingly, Count VI is not barred by the doctrine of intra-corporate conspiracy.

Moreover, Plaintiff raises the inference that Defendants were motivated by illicit purposes, as opposed to the lawful interests of the Village. The Board was incessant in their efforts to re-appoint Sparks as Chief of Police, despite multiple reports of malfeasance, and despite the Mayor's disapproval of his re-appointment (Compl. ¶¶37, 42-43). Rather than investigate the complaints and rightfully credit the Mayor's input, the Board threatened to do "whatever it takes" to reappoint Sparks, and even suggested reprimanding Plaintiff for raising an issue that might jeopardize that reappointment (Compl. ¶¶42-43). After the Board meeting, Defendants O'Grady, Morris, and Sparks extended Plaintiff's probationary period, noting specifically that it was "because of the investigation against [Sparks]" (Compl. ¶47). Then, they questioned Plaintiff about

her working relationship with Sparks, and asked her how she was going to earn back the trust of Sparks and the Board (Compl. ¶48). Given the Boards' reappointment of Sparks without the Mayor's approval, and in the face of two complaints of misconduct from two officers who were eventually terminated, the Court can reasonably infer that the Board had selfish, personal motives that had nothing to do with the Village itself. In which case, they would be acting outside of the scope of their employment. *Jefferson v. City of Harvey*, No. 98 C 5834, 2000 WL 15097, at *4–5 (N.D. Ill. Jan. 5, 2000). Sparks was similarly motivated by personal animus to retaliate against Plaintiff for reporting her suspicion that he was engaging in criminal conduct (Compl. ¶41).

The second exception could also apply, as the Complaint alleged a widespread pattern of retaliation by multiple defendants throughout the Village. *Spalding*, 24 F. Supp. 3d at 779; *see Volk*, 845 F.2d at 1435 (holding that the intra-corporate conspiracy doctrine did not bar a conspiracy claim where the plaintiff "alleged numerous acts undertaken by several defendants"). The Seventh Circuit identifies factors such as the number of acts involved, the number of agents involved, and the nature and scope of the conspiracy itself. *Jefferson*, 2000 WL 15097, at *4–5. Here, Plaintiff's Complaint alleged a conspiracy that involved numerous officers over a span of several months "and that, if occurred, amounted to the implementation of a far-reaching plan that clearly violates the law." *Id.* (Compl. ¶¶105-106). The breadth of Plaintiff's conspiracy allegations allows her claim to survive.

Therefore, Defendants' Motion to Dismiss Count VI must be denied.

## VI. The Seventh Circuit has Held that Individual Liability Exists under the Illinois Whistleblower Act (Count VII).

While an Illinois Whistleblower Act ("IWA") claim may be brought only against an employer, the IWA defines "employer" as "any *individual*, partnership, association, corporation … or any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee" (emphasis added). 740 ILCS 174/5. Moreover, Defendants fail to acknowledge the holding in *Bello v. Vill. Of Skokie*, wherein the Court held that individual liability

exists under the IWA. 151 F. Supp. 3d 849 (N.D. Ill. 2015). The Court stated, "[The IWA] makes it clear that individuals acting on behalf of an entity that one might colloquially understand to be a person's 'employer' may likewise be considered 'employers' potentially liable for violating the statute." *Bello*, 151 F. Supp. 3d at 865. The Seventh Circuit has since followed *Bello* in holding that IWA individual liability exists. *See Hower v. Cook Cnty. Sheriff's Office*, No. 15 C 6404, 2016 WL 612862, at *3 (N.D. Ill. Feb. 16, 2016) (rejecting defendants' argument that plaintiff could not pursue an IWA claim against individuals); *Mack v. City of Chicago*, No. 16 C 7807, 2017 WL 951369, at *6 (N.D. Ill. Mar. 10, 2017) ("the statutory text makes clear that when an individual interacts with an employee on behalf of the employer, that person may himself be considered an employer within the meaning of the [IWA]").

In Plaintiff's case, Defendants Sparks, O'Grady, Morris, and Post were individuals acting directly or indirectly in the interest of the employer, the Village, as high-ranking officials superior to Plaintiff (Compl. ¶¶13-16, 25-28). Acting within the scope of their employment, they retaliated against Plaintiff for reporting what she believed to be unlawful conduct by Sparks by extending her probationary period and eventually terminating her employment (Compl. ¶¶47, 69-70). Defendants further threatened Plaintiff with additional retaliation by telling her that the "union won't protect [her]" and that "things will be changing" (Compl. ¶113). Interpreting the statute as written, these Defendants' fall within the IWA's ambit, and are therefore not entitled to dismissal on this basis.

Lastly, Defendants argue that there is no basis to seek front pay under the IWA, as damages are limited to reinstatement, back pay with interest, and compensation for any damages sustained as a result, inclusive of attorneys' fees (Def. Br. p. 19). However, the IWA permits recovery of "all relief necessary to make the employee whole, including *but not limited to* the following…" (emphasis added). 740 ILCS 174/30. The Seventh Circuit has routinely found front pay to be the functional equivalent of reinstatement if and when reinstatement is no longer a viable remedy. *See Williams v. Pharmacia, Inc.*, 137 F.3d 944, 952 (7th Cir. 1998) ("[F]ront pay…is a

substitute remedy that affords the plaintiff the same benefit … as the plaintiff would have received had she been reinstated"); *see McNeil v. Econ. Lab., Inc.,* 800 F.2d 111, 118 (7th Cir. 1986) ("Generally, front pay is awarded as a substitute remedy when reinstatement is inappropriate, such as when 'there [is] no position available or the employer-employee relationship [is] pervaded by hostility"). As an equitable remedy, the Court therefore has discretion to decide whether to award front pay to Plaintiff for her IWA claim.

## CONCLUSION

For the aforementioned reasons, Defendants' Motion to Dismiss Counts I-VII should be denied in its entirety. In the alternative, Plaintiff requests leave to amend her Complaint in the event that her pleadings are nonetheless held to be insufficient.

Respectfully submitted,

KAYLEY SPROUT

By:   s/ Kerri L. Feczko
          *One of Plaintiff's Attorneys*

Stephen R. Miller (smiller@robbins-schwartz.com)
Kerri L. Feczko (kfeczko@robbins-schwartz.com)
Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd.
55 West Monroe Street, Suite 800
Chicago, IL 60603
P: 312.332.7760
F: 312.332.7768

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that Plaintiff's Response to Defendants' Motion to Dismiss Counts I-VII of Plaintiff's Third Amended Complaint contains 6,665 words, including headings, quotes, and footnotes, and complies with L.R. 7.1 which limits a memorandum to 15 pages or 7,000 words.

s/ Kerri L. Feczko
Kerri L. Feczko

**<u>CERTIFICATE OF SERVICE BY ELECTRONIC MAILING</u>**

I hereby certify that I electronically filed the foregoing Plaintiff's Response to Defendants' Motion to Dismiss Counts I-VII of Plaintiff's Third Amended Complaint with the Clerk of the Court using the CM/ECF system on this 20th day of February, 2019, which constitutes service on all counsel of record, registered filing users, pursuant to Fed. R. Civ. P. 5(b)(2)(D) and L.R. 5.3:

s/ Kerri L. Feczko
Kerri L. Feczko