UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| KAYLEY SPROUT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 18-cv-1322-JES-JEH |
| | ) |
| VILLAGE OF HUDSON, et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER AND OPINION

Now before the Court is Defendants' Motion (Doc. 17) to Dismiss the Third Amended Complaint for Failure to State a Claim. Plaintiff has filed a Response (Doc. 20) to that Motion. For the reasons that follow, the Motion is DENIED.

### BACKGROUND

Kayley Sprout is a former police officer for the Village of Hudson ("Hudson"), where she was a full-time employee from May 10, 2016 until her termination on September 5, 2017. The Third Amended Complaint alleges that she was retaliated against for reporting possible misconduct by the Police Chief, and that she was discriminated against based on her sex and pregnancy. She brings this suit against the Village of Hudson, Police Chief Sparks, and nine members of the Board of Trustees for the village. More specifically, the twelve counts of her Third Amended Complaint allege: 1. First Amendment retaliation, 2. § 1983 sex discrimination, 3. § 1983 pregnancy discrimination, 4. a § 1983 *Monell* claim against Hudson for discrimination and retaliation, 5. a § 1983 *Monell* claim against Hudson for failure to train, 6. § 1983 conspiracy against all individual defendants, 7. Illinois Whistleblower Act violations, 8. retaliatory discharge by Hudson under Illinois law, 9. Illinois Human Rights Act ("IHRA") pregnancy

1

discrimination by Hudson, 10. IHRA failure to accommodate pregnancy by Hudson, 11. IHRA gender discrimination by Hudson, and 12. IHRA retaliation by Hudson. Doc. 16.

The events Plaintiff describes in her Complaint took place between April 2017 and September 2017. Plaintiff filed a charge with the EEOC and the Illinois Department of Human Rights on September 5, 2017, received a notice that it was filed on October 27, 2017, and amended that charge on February 23, 2018. She filed the initial complaint in this case on September 4, 2018. Defendants moved to dismiss counts 1–7 of the Third Amended Complaint on January 29, 2019 for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Doc. 17. Plaintiff filed a response on February 20, 2019. Doc. 20. For the purposes of resolving this Motion, the Court takes the following factual allegations from Plaintiff's Third Amended Complaint as true.

**1. Events Relating to the Retaliation Claims**

Plaintiff began working as a part-time Hudson police officer on March 30, 2016. She went full-time on May 10, 2016, and her performance evaluation in March 2017 showed no negative comments. That evaluation was signed by Police Chief Sparks and Defendant O'Grady, the city's Trustee of Police. The following month, in April 2017, Plaintiff told the then-Mayor Jason Collins (referred to herein as "the Mayor") that she suspected Chief Sparks had tipped off a suspect about an upcoming search warrant, which she believed to be a criminal act. Another police officer had also complained to the Mayor about suspected misconduct in late 2016. The Mayor told Chief Sparks that he did not intend to re-appoint him as the Police Chief, and the Mayor asked Plaintiff to attend an April 18, 2017 meeting of the Board of Trustees. She attended in plain clothes while off duty, intending to speak publicly about Chief Sparks' behavior as a matter of public concern. When the Board became aware that Plaintiff was there to report about

Chief Sparks, they moved the meeting into a closed session and had her wait in the hallway. Chief Sparks was in an adjacent room where he could hear what was discussed during that closed session. The Mayor explained to the Board what Plaintiff had told him, and the Board criticized Plaintiff and the other reporting officer for not following the chain of command in reporting misconduct, stating that they might be reprimanded. The Board told the Mayor that they would do whatever they needed to in order to re-appoint Chief Sparks despite the Mayor's opinions.

On May 2, 2017, Chief Sparks was re-appointed as Police Chief. The Mayor resigned the next day. On May 4, 2017, Chief Sparks emailed the entire police department stating that the press policy of the department "is to say nothing." Trustees O'Grady and Post were copied on that email. On May 8, 2017, Plaintiff's probationary period was extended by one month and her access to the evidence room was revoked. Defendants Sparks, O'Grady, and Morris told her that this was "because of this investigation against the Chief." The same day, those three defendants gave her a list of questions to answer, asking why she did not follow the chain of command and asking "If retained, how do you think you're going to earn the trust of myself and the rest of the Village employees and the Board?" Plaintiff refused to answer some of their questions without a union representative present. Chief Sparks told her "the union won't protect you because you're on probation." Defendants Sparks, O'Grady, and Morris gave her a printout of police policies that included definitions of "loyalty," "truthfulness," and "chain of command."

The other officer who reported Chief Sparks' alleged misconduct was fired on May 29, 2017. He went to the Illinois State Police ("ISP") to report Chief Sparks' misconduct on June 15, 2017, and Plaintiff did the same on June 19, 2017. When she went to the ISP, she was in plain clothes, off-duty, and motivated by her opinion that Chief Sparks' behavior was a matter of public concern. The ISP contacted Chief Sparks about Plaintiff's report after this meeting.

Plaintiff was fired on September 5, 2017. Following her termination, Trustee Hill retaliated against her by intentionally delaying her receipt of Illinois Municipal Retirement Fund ("IMRF") temporary disability benefits.

**2. Events Relating to the Discrimination Claims**

On July 5, 2017, Plaintiff told Trustee Meissner that she was pregnant and had a 25-pound lifting restriction. She listed duties she would still be able to perform, and attached a copy of the IHRA, which addresses accommodations for pregnancy. The next day, she told Chief Sparks and Trustee O'Grady about the situation, asked to be moved to day shifts, and gave them a copy of the IHRA, which also prohibits pregnancy discrimination. Both responded by saying that they hadn't heard of any law prohibiting pregnancy discrimination. Five days later, on July 11, 2017, Chief Sparks assigned Plaintiff to desk duty and would not allow her access to the squad car. He kept her on the night shift and denied her request to work in the evidence room because of her "current medical condition and the fact that contents of some evidence that may possibly be absorbed through the skin or inhaled while in the room." Chief Sparks explained that he would not move Plaintiff to the day shift because he would be engaged in meetings during the day that he did not want her to overhear. He further instructed Plaintiff not to wear her police uniform when she came to work. On July 12, 2017, Plaintiff gave Chief Sparks a note from her doctor specifying that she could continue with normal duties (other than the lifting restriction), and did not need to be placed on desk duty until 18 weeks gestation.

On July 27, 2017, in response to Plaintiff's notice to the Village of Hudson of her pregnancy, Chief Sparks gave Plaintiff a Notice stating that Hudson may end her employment. She complained to him of pregnancy discrimination. When she came back to work the next day, there was a printout on her desk with the definition of "loyalty" on it. On August 28, 2017,

Plaintiff was denied IMRF disability benefits because Trustee Hill did not submit the proper employer statement.

Prior to firing Plaintiff, Chief Sparks did not allow her to organize the supplies or paperwork in the squad cars, saying that he did not want her to have access to his squad car. Although the July 27, 2017 notice informed her that she would be allowed to use her accumulated paid leave or be placed on unpaid leave prior to her termination, she was not permitted to do so. Finally, on September 5, 2017, Chief Sparks gave Plaintiff a notice of termination, claiming that the city had no further work available in the police department or anywhere else that would meet the 25-pound lifting restriction imposed by her doctor. Trustees O'Grady and Post were present when Chief Sparks gave her the notice of termination.

**LEGAL STANDARD**

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must describe the claim in sufficient detail to put defendants on notice as to the nature of the claim and its bases, and it must plausibly suggest that the plaintiff has a right to relief. *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007). A complaint need not allege specific facts, but it may not rest entirely on conclusory statements or empty recitations of the elements of the cause of action. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In deciding whether the complaint sufficiently states a claim, courts take well-pleaded allegations in the complaint as true and draw all permissible inferences in favor of the plaintiff. *See Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015).

## DISCUSSION

**Count I – First Amendment Retaliation**

Plaintiff's first claim is that Defendants Sparks, Meissner, Hill, Morris, Post, and O'Grady retaliated against her based on her speech, in violation of the First Amendment. Both parties agree that Plaintiff must show 1. her speech was protected by the First Amendment, 2. she suffered a deprivation likely to deter speech, and 3. her protected activity was at least a motivating factor for the retaliatory action. Doc. 17, p. 8 (citing *Archer v. Chisholm*, 870 F.3d 603, 618 (7th Cir. 2017)); Doc. 20, p. 4 (citing *Peele v. Burch*, 722 F.3d 956, 959 (7th Cir. 2013)). Defendants argue that Plaintiff has not shown that her speech was constitutionally protected because statements by public employees pursuant to their official duties are not statements by private citizens, and thus lack First Amendment protections. Doc. 17, pp. 8–9 (citing *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)). According to Defendants, Plaintiff had a duty to report official misconduct as part of her employment, and thus her internal complaints were not protected by the First Amendment. Additionally, they claim that she hasn't shown that Defendants knew about her ISP report such that it was a "motivating factor" for any retaliatory action. Doc. 17, p. 10. Finally, they note that her claim for reinstatement should be stricken, as the individual defendants do not have the authority to reinstate Plaintiff.

In response, Plaintiff argues that her speech was made about her employment, based on information she "acquired by virtue of [her] public employment," but not pursuant to her official duties. Doc. 20, p. 4 (quoting *Kristofek v. Village of Orland Hills*, 832 F.3d 785, 793 (7th Cir. 2016)). Plaintiff points out that her complaints were *not* internal, nor according to departmental policy or obligation; her reports to the Mayor, the Board, and the ISP were outside the chain of command. *Id.* at 4. Plaintiff further argues that she has sufficiently pleaded facts to support her

claim: she stated that all Board members knew she had complained about Sparks, all knew that she had brought her report to the Mayor, and at a minimum Sparks knew that she had reported him to the ISP. *Id.* at 6. She concedes that her request for reinstatement associated with Counts I, II, III, and VI should be stricken, as the individual defendants do not have the power to reinstate her. *Id.*

When public employees report misconduct outward, rather than following internal procedure, they speak as private citizens, and their speech is constitutionally protected. *See, e.g., Houskins v. Sheahan*, 549 F.3d 480, 491 (7th Cir. 2008) (finding that an internal report by a social worker was not constitutionally protected, but her report to local police was not "generated in the normal course of her duties"). Because Plaintiff's reports were not internal, but rather broke the protocol for reporting misconduct internally, her statements are considered those of a private citizen. Accepting the facts Plaintiff alleged in her Third Amended Complaint as true, she has also sufficiently shown that all individual defendants were aware of her statements. The Motion to Dismiss Count I for failure to state a claim is therefore DENIED.

**Counts II and III - § 1983 Gender Discrimination and Pregnancy Discrimination**

Plaintiff's second and third claims are that Defendants Sparks, Meissner, Hill, Morris, Post, and O'Grady discriminated against her, based on her sex and pregnancy. Doc. 16, pp. 13–17. Defendants argue that these claims should be dismissed for two reasons: 1. she has failed to allege how each individual defendant specifically was responsible for the § 1983 violation, and 2. she cannot show that any individual defendant took a materially adverse action against her; the Village of Hudson was the entity that fired her, and the other events she describes do not qualify as materially adverse employment actions. Doc. 17, pp. 11–12. Plaintiff responds that the pleading standard in § 1983 discrimination cases is quite relaxed—plaintiffs need only claim that

7

the employer instituted a specific adverse employment action against them on an unconstitutional basis. Doc. 20, p. 7 (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008)). Plaintiff notes that she has specified a number of materially adverse employment actions by the individual defendants:

> Sparks extended Plaintiff's probationary period, reassigned her to desk duty, refused her access to a squad car, refused to move Plaintiff to day shift, prohibited her from wearing her police uniform while at work, revoked Plaintiff's access to the evidence room and denied her subsequent requests for access, denied Plaintiff's requests to complete work assignments, took no action in response to her complaints of discrimination, and terminated Plaintiff's employment (Compl. ¶¶47, 61-62, 66, 69, 71). Defendant Hill denied Plaintiff IMRF disability benefits for her pregnancy and then purposefully delayed Plaintiff's receipt of IMRF disability benefits after Plaintiff's termination (Compl. ¶¶68, 73). Defendants Morris and O'Grady worked in conjunction with Sparks to extend Plaintiff's probationary period and revoke her access to the evidence room (Compl. ¶47). Defendants Post and O'Grady were also present with Sparks during Plaintiff's termination meeting (Compl. ¶70).

Doc. 20, pp. 7–8.

There are three general categories of materially adverse employment actions: "(1) cases in which the employee's compensation, fringe benefits, or other financial terms of employment are diminished, including termination; (2) cases in which a nominally lateral transfer with no change in financial terms significantly reduces the employee's career prospects by preventing her from using her skills and experience, so that the skills are likely to atrophy and her career is likely to be stunted; and (3) cases in which the employee is not moved to a different job or the skill requirements of her present job altered, but the conditions in which she works are changed in a way that subjects her to a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in her workplace environment." *O'Neal v. City of Chicago*, 392 F.3d 909, 911 (7th Cir. 2004).

To begin with the most obvious, termination is clearly an adverse employment action. *See, e.g., Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). Whether the remaining acts alleged by Plaintiff constitute adverse employment actions depends on factual findings such as whether reassignment involved "significantly different responsibility," and are not properly resolved as a matter of law at this stage. *Bell v. E.P.A.*, 232 F.3d 546, 555 (7th Cir. 2000); *see also Thompson v. Memorial Hospital of Carbondale*, 625 F.3d 394, 408 (7th Cir. 2010) ("[W]e have previously suggested that placing an employee on probation might constitute an adverse employment action."); *Dahm v. Flynn*, 60 F.3d 253, 257 (7th Cir. 1994) ("[A] dramatic downward shift in skill level required to perform job responsibilities can rise to the level of an adverse employment action."). When questions of fact exist as to whether a given action constitutes a materially adverse employment action, Courts allow juries to resolve the question. *See Lewis v. City of Chicago Police Department*, 590 F.3d 427, 436 (7th Cir. 2006) (denying plaintiff-appellant's claim that the Court should have found the denial of overtime to be a materially adverse employment action as a matter of law). The Court finds that Plaintiff has plausibly alleged specific adverse employment actions by individual defendants Sparks, Meissner, Hill, Morris, Post, and O'Grady.

The individual defendants' argument that they cannot be liable for Plaintiff's firing because the Village of Hudson was formally Plaintiff's employer falls flat. "For a defendant to be liable under § 1983, he or she must have participated directly in the constitutional violation." *Hildebrandt v. Illinois Department of Natural Resources*, 347 F.3d 1014, 1039 (7th Cir. 2003). Although the Village of Hudson was technically her employer, Hudson can only act through its agents, the Board and the Police Chief. Plaintiff has successfully pleaded that the listed

9

individual defendants (who have authority as to the Village's employment matters) directly participated in unconstitutional actions such as firing her based on her pregnancy. The motion to dismiss is therefore DENIED as to Counts II and III.

**Counts IV and V –** *Monell* **Claims Against the Village of Hudson**

Defendants move to dismiss Counts IV and V on the grounds that Plaintiff has not asserted a factual basis for "how or why any of these individual defendants are final policymakers" and that Plaintiff has not asserted a factual basis for her claim that the Village of Hudson had a policy of failing to adequately train employees. However, "a complaint does not fail to state a claim merely because it does not set forth a complete and convincing picture of the alleged wrongdoing." *McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000) (quoting *Payton v. Rush-Presbyterian-St. Luke's Medical Center*, 184 F.3d 623, 626–27 (7th Cir. 1999)). Rather, courts generally rely on plaintiffs' assertions of final policymaking authority at the dismissal stage—summary judgment is the appropriate stage at which to inquire into the factual bases for plaintiffs' allegations that defendants were policymakers. *See, e.g., Sailsbery v. Village of Sauk Village*, 2016 WL 4701446, *9 (N.D. Ill. 2016) (*citing McCormick*, 230 F.3d at 325; *Howard v. Sheriff of Cook County*, 2016 WL 4366598, *3 (N.D. Ill. 2016)). Plaintiff's allegations regarding the Hudson's failure to train its employees regarding gender and pregnancy discrimination are also sufficient to raise her right to relief "above the speculative level, on the assumption that all the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Defendants' motion to dismiss is thus DENIED as to Counts IV and V.

**Count VI - § 1983 Conspiracy**

Defendants claim that Plaintiff's conspiracy claim should be dismissed because the intra-corporate conspiracy doctrine shields Defendants from liability. Doc. 17, p. 17. According to Defendants, Plaintiff has not shown that any individual defendant was motivated solely by personal bias or that there was a broader discriminatory pattern permeating the ranks of the organization's employees, and therefore that the intra-corporate conspiracy doctrine applies. *Id.* (citing *Spalding v. City of Chicago*, 24 F. Supp. 3d 765, 779 (N.D. Ill. 2014)). Plaintiff responds that her Complaint sufficiently alleges exceptions to the intra-corporate conspiracy doctrine: she alleged a conspiracy to retaliate against her for reporting Chief Sparks' misconduct, which would be outside the scope of any Defendant's employment (*see Fairley v. Andrews*, 300 F. Supp. 2d 660, 668–69 (N.D. Ill. 2004)), and she alleged widespread retaliation from multiple Village employees over the span of months, suggesting a broader pattern in the organization (*see Volk v. Coler*, 845 F.2d 1422, 1435 (7th Cir. 1988)). Doc. 20, p. 17. Taking her factual allegations as true, Plaintiff has indeed provided enough information to show she is plausibly entitled to relief. The Court therefore DENIES the Motion to Dismiss as to Count VI.

**Count VII – Illinois Whistleblower Act Claim Against Individual Defendants**

Defendants argue in this portion of their Motion that the Illinois Whistleblower Act does not permit recovery of front pay. Doc. 17, p. 19. Plaintiff argues that the Act allows recovery of "all relief necessary to make the employee whole," and notes that the Seventh Circuit has awarded front pay in other circumstances where reinstatement was not a viable remedy. Doc. 20, p. 18. The availability of this particular form of damages is a premature inquiry at this time—as explained below, Plaintiff has sufficiently alleged facts permitting an inference that she is entitled to relief. The parties may raise arguments about the specifics of the appropriate relief at a

later stage in this litigation. *See Ronald McDonald House Charities of Chicagoland and Northwest Indiana, Inc. v. Winning Charities Illinois, LLC*, 2014 WL 1480750, *3 (N.D. Ill. 2014).

Defendants further argue that the Illinois Whistleblower Act only allows Plaintiff to pursue an action against her employer (Hudson), not the individual defendants. Doc. 17, p. 19. Plaintiff responds by noting that the statute defines "employer" as including "any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee." Doc. 20, p. 17 (citing 740 ILCS 174/5). She notes cases in which individuals may be liable for violating the statute when they act on behalf of the technical "employer," including *Bello v. Village of Skokie*, 151 F. Supp. 3d 849, 865 (N.D. Ill. 2015). Because Plaintiff has pleaded sufficient facts to show that the individual defendants acted on behalf of the Village of Hudson with respect to Plaintiff's employment, the Motion is likewise DENIED as to Count VII.

## CONCLUSION

For the reasons stated herein, Defendants' Motion (Doc. 17) to Dismiss the Third Amended Complaint is DENIED.

Signed on this 1st day of March, 2019.

/s James E. Shadid
James E. Shadid
Chief United States District Judge